May it please the Court, Scott Embledge representing the appellants. To uphold the District Court's ruling in this case, this Court would have to create new law. That new law would be an unprecedented, judicially created exception to the Warren Act, an exception not supported by the statutory language or by the case law that has interpreted the Warren Act. The plaintiffs alleged in this case that Globe Aviation knew that it had a contract that was going to be terminated, that it gave Warren Act notice to workers at other locations but not at San Jose Airport, that Globe, not the federal government, laid off these workers, and that Globe didn't go out of business. It simply decreased the number of employees that it had working at San Jose. Under the plain language of the statute and under existing case law, those allegations in and of themselves are sufficient to state a claim under the Warren Act. The Court need look no further than the government contracting cases under the Warren Act. In those cases where the federal government has determined that it no longer needs a defense contractor to provide a particular defense equipment, be it a fighter jet or a bomber or anything else, the Court did not find that the defense contractor was exempted from the Warren Act when the federal government terminated the contract and that termination resulted in layoffs. What the courts looked to there is whether or not it was reasonably foreseeable to the employer. That is an affirmative defense under the Warren Act. It's an affirmative defense that's available to Globe Aviation, and it's an affirmative defense that is inherently fact-based. It's something that needs to be explored through discovery and resolved at summary judgment or at trial. Apart from the government contracting cases, the Court can look at other cases that involve government closures of facilities, like the Elsinore Shores Casino case. There, again, it was the government's conduct that resulted in the closure of the place of business and, therefore, resulted in the layoffs. And the employer argued, wait, that creates an exemption to the Warren Act. The Court specifically said, no, it doesn't. It said rather than be an exemption to the Warren Act, you go into the affirmative defense analysis of whether there was an unforeseeable business circumstance. Well, of course, to get an exemption, you've got to get the act applying in the first place. And so isn't the real starting point here whether the employer ordered the layoff? And when you pierce through it, the employer had absolutely nothing to do with this. I mean, the government said, we're going to take over security at the airports. When it did so for any particular airport, you know, who knows? It was all different. But it was clear from day one, it was all over the papers, everybody knew that the government was going to take over airport security. So why is this any different at all from the FDIC cases? Except for the fact that the FDIC is the government, which I understand. That's obvious. So, but in the FDIC cases, the FDIC takes over the bank. Here, the government took over Glove's business. Just did. Now, Your Honor, first I have to take issue with the factual statements you're making. Those aren't statements, factual statements that are contained anywhere in the complaint. And, in fact, we alleged facts that show that that probably was not the case. These layoffs took place in phases. It wasn't as if the Federal Government came in one day and said, we're taking over today. The complaint alleges that the mass layoffs were the direct and proximate result of Glove's withdrawal from airport security at San Jose Airport. The terminations were a product of the Aviation and Transportation Security Act. And that's undeniable, Your Honor. I know. Okay. So that being the case, why isn't my bottom line right? Those layoffs were caused by bad conduct by the Federal Government, just like the layoffs were caused in the government contracting cases by the conduct of the Federal Government. And you have two different paradigms here. You have the bank cases on the one hand, and you have the government contracting cases on the other. The bank cases are substantially different for one very important reason. The bank didn't lay the employees off. Well, but, you know, the point is the bank, I understand that, and I agree with you, but there's no difference in what happened here. Oh, I'm sorry, Your Honor. I know, but why? Because in the bank closure case, the Federal Government came in and shut down the bank, took over the workforce, and then, at a subsequent time, laid off the employees. The Federal Government terminated the employment. Here, there was no clean break, as we alleged in the complaint, between the Federal Government coming in and taking over the location at San Jose Airport. There were layoffs and phases. There's evidence in the record that, in fact, Globe employees continued to work. Some Globe employees continued to work at the airport for a substantial period of time. All that goes to the issue of control. Obviously, in the bank cases, the bank had no control over what the Federal Government did with those employees when it did it. Here, we've alleged, in a number of ways, that Globe did have control. Let me give you an example. Let's say, in discovery, we find out that, in June of 2002, Globe sat down with the Federal Government and worked out a plan. How are we going to transition at San Jose Airport? Well, let's lay off this many employees on this date, and you can bring in a group there, and then, after that group gets settled, maybe we'll lay off some more on this other date. If that is what occurred, and there's evidence to suggest something like that very well may have occurred, based on the few communications we know of, having been unable to do a discovery. If that had occurred, Globe has control. Globe has – and Globe has the ability to give the Warren Act notice. And I think that's the crux of what this case is about. If Globe knew that these layoffs were coming, why isn't it like any other employer that employs over a hundred people? It needs to share the burden that those employees face when they get laid off. As if anybody didn't know it. I mean, from – for months. Now, Your Honor, if you – if the complaint points out that Globe – It's a practical problem, and I don't mean to make light of it, but I mean, the world knew that the United States government was taking over security at the airports. People did not know when. Your Honor, if you read the complaint, what is shown is that Globe told employees that they would be reemployed by the Federal Government. So if I'm an employee working at Globe, I'm thinking, okay, well, I'm going to get my paycheck from somebody else, but at some point in the future, I'm going to now, you know, now have a different jacket on working for the Federal Government. That would be – and if, in fact, that had happened, we'd be in the bank analogy. If the TSA had come in and said, okay, we're going to take over today, we're going to take this workforce, we're going to employ them, and then later on, the TSA laid them off, that would be like the bank cases. But here you've got a group of employees who are told at a meeting with Globe, don't worry – I mean, I'm sure you – you know, you've all read the newspapers. You know that there's changes afoot, but you're going to be reemployed. As long as you're citizens, as long as you've got the right documentation, you're going to be reemployed here. Now – How does that help you? It sounds like it makes it worse. No, Your Honor. What that – if that were true, if, in fact, they were reemployed – But the employer is completely in the dark, and the Government came in and made its promises no good. If that's – if that's the case. But we don't know if that's the case. This case was thrown out on a motion to dismiss before we had a chance to even explore that. Admittedly, if the Government kept Globe in the dark and said, don't worry, don't worry, we're going to take over your employees, and then on September 27th, they said, oh, changed our mind, you know, we're going to take over in three days, fire all your employees, Globe has got a pretty good affirmative defense under the unforeseeable business circumstances. But we don't know that. We can't know that because it's a fact-based inquiry, as the Elsinore Shores case holds it, as virtually every other Warren Act case holds. This affirmative defense requires a factual context. It may have been unforeseeable to Globe, but we've alleged facts that suggest that it wasn't, and certainly a factual development may very well prove that it wasn't. They may not have known the full 60 days. But under the Warren Act, if you've got notice, you need to share that notice with the employees. So the employees aren't the ones that get the rug pulled out from under them, and the employer have no obligation to either give them notice or compensate them for the time period that the employer had the notice. Now, in the bank cases, again, the employer had no control. The Federal Government came in, took over, took over the workforce, and the Federal Government decided what to do with that workforce. Here, that's not the case. Here, the Federal Government said, in February of 2002, we're going to federalize security at the airports. And then, go to September of 2002, Globe tells the employees, you're going to be laid off in a few days. Some of you are, some of you might be laid off a little later, and we're going to do it in phases. Well, what happened between February and September? Did Globe have notice? Did the Federal Government discuss with Globe how to go about this? And if Globe had notice, then Globe was obligated under the WARN Act to provide that notice to the employees. And, Judge Reimer, you said, you know, before you even get to that question, you have to decide, do you fall within the WARN Act? Well, the WARN Act is very clear. It applies to a business enterprise that employs more than 100 people. Right. And that When the employer orders the layoff. It, well, that is, the employer ordered the layoff here in just the same way that the employer ordered the layoff in the government contracting cases, in Lohrer and Halkius, and in the Elsinore Shores case. The government, the government didn't have exclusive control. The employer here, just like the employer in those cases, had some control. I mean, the defense contractor in Lohrer could have said, well, we're just going to readjust our workforce here. We're not going to lay anybody off. We're going to assign those people that were building that bomber to this tank. But the difference is that there's just no airport security business. Now, and, Your Honor, that is, we don't know that. And, in fact, there are. See, the problem is you alleged it. I know I don't know it for sure. Well, I do know it. I mean, everybody knows it. We read the newspaper. But your complaint alleges that this layoff was the direct and proximate result of the Act, not of anything the employer did. That's what your complaint alleges. Well, yes, the what the Federal government said it was going to do was the direct and proximate result, these layoffs were the direct and proximate result of what the government said it was going to do, yes. But that doesn't mean that Globe had no options. Globe is an ongoing business concern. It has employees at other airports. And we don't know what. That's not material to the Warren Act, is it? Absolutely. It goes to. Site specific. It goes to control. It goes to the issue, just like the government contractor, just like Elsinore Shores, whether they have control over what they're doing with their employees at the time they have noticed that these employees need to be laid off. And here, again, Your Honor, apart from that allegation, the complaint contains allegations that the layoffs were to occur in phases, that we asked to amend the complaint to point out that employees continued to work there. We specifically alleged that Globe had the sufficient notice to be able to tell the  So the issue of control that was not present in the bank cases was present here for Globe. And at least that's what has been alleged. And that is what we should be entitled to explore in discovery in the case. And this is the same type of distinction has come up in the in other contexts that don't involve government takeovers. They involve secured creditors and debtors. They involve parent and subsidiary companies where the issue is which company employs the employees at the time of the layoff. This Court made clear in the chauffeur driver's case, it said the crucial question is whether the defendant at the time of the business was operating a business as a going concern. And was that the defendant that laid off the workers? And both those questions are answered affirmatively here. Globe wasn't put out of business. Its employees were not subsumed into the TSA. It continued to operate as a going concern. And it was the employer that laid off the workers. And what is missing from the district court's analysis and from Globe's argument is an argument as to why there should be an exception here to the Warren Act if, in fact, Globe had notice. If Globe knew in June the 300 workers were going to be laid off on September 27th, there is no reason whatsoever to make an exception to the Warren Act. Everybody knew from November of 2001 that Globe wouldn't have any security business at any airport. Well, everybody knew that. I don't see. What you didn't know was exactly when at any particular airport. Your Honor, I don't see how you can make those statements when we have facts in the record that show in 2004 there were still Globe employees working there. As far as I know, if you go to San Francisco Airport today, you might see people with Globe aviation badges on still working there. So while everyone knew that the federal government had an intention of federalizing airport security, no worker at San Jose Airport had any idea if they were going to lose a job or when they were going to lose a job. And if Globe knew that but didn't share that information with the workers, that's exactly what the Warren Act is designed to prevent, is holding back that information and forcing the workers to shoulder the burden of the layoff. And I'd like to reserve my remaining time. Surely. Thank you, Your Honors. My name is Sam McAdam, and I'm the attorney for the defendant in the Appalachian Globe Airport Security Services, Inc. I'm joined by my colleague, Dan Newland. We ask the court to affirm Judge Ware's order granting the motion for judgment on the pleadings and the judgment entered in this case. And plaintiff's counsel, or appellant's counsel, repeatedly asked that this case was analyzed as an exception and so forth. And I think, Your Honor, in your question, you asked, does the Warren Act apply in the first instance in this case? And that's really the issue that's before the court and how Judge Bickler — that, sure, literally it does. I mean, never mind what really happened. Literally, Globe was the employer. And literally, Globe did the laying off. So why, literally, doesn't the Act apply? Right. And I think we have to look at the principal three building blocks that say the Warren Act doesn't apply here. And the first is the actual language of the statute. The second is the way the Department of Labor has interpreted it. And the third, of course, is how the law was applied in the bank seizure cases. The Warren Act comes out of the late 1980s and the crisis in the savings and loans situation. But my question is a little simpler and more direct. And that is that, literally, Globe was the employer. Literally, Globe laid off these folks. So, literally, why doesn't the Act apply? Because, and simply put, Globe didn't order the layoffs. The Warren Act applies when an employer orders a plant shutdown or a mass layoff. And that's what was debated in Congress in the savings and loans crisis. That's what the Department of Labor considered. That's what the court in the Buck and the savings and loan cases talked about. Is this an employer order mass layoff? This is a takeover by the Transportation and Security Aviation Department of the United States government. And it's done pursuant to an act of Congress. Well, it's a takeover of the business. That I grant you. It's a takeover of the business of providing security at airports. As I indicated in my conversation with Mr. Emblidge, you know, that's a pretty powerful argument for similarity to the FDIC cases. But as he points out, literally, that's not what happened. Well, it, it, the literally the government in the FDIC cases is the employer. And in this case, the takeover of the airport screening services was ordered by an act of Congress that said these jobs will be federalized. Okay. And so the, it was the act of Congress was doing that. The TSA was ordering it. And one day Globe is managing these airport screening jobs. And the next day, the TSA is managing those at the order of Congress, at the direction of the TSA. And Globe has no control or ability to say, no, we're going to maintain these jobs further. True. But he, as Mr. Emblidge points out, the act just said it's going to happen. Everybody knew it was going to happen. Was going to happen. Maybe not everybody knowing when it was going to happen at which airports. Do. So, so again, he suggests the purpose of the act isn't being fulfilled because notice could be given in any particular airport, depending upon what the employer knows when it knows it. The, the, the fundamental building blocks of the Warren Act are, is that the employer has control over the circumstances. That the employer has the ability to remedy the circumstances that are leading to the plant shutdown or the mass layoff. And that the employer has caused, in some measure, the downturn in business or the circumstances that have led, led to this mass layoff or plant shutdown. And that's why this case is distinct from the government contracts case. That's why this case is distinct from the casino case. Look at the Atlantis Casino in New Jersey. There, there was an issue of the license being pulled. That the employer in that case was operating a bad business. They weren't maintaining the license as the government had required. They caused the circumstances. They had control over it. And had they taken action with the government at the time, they might have been able to negotiate maintaining that license or renewing that license. In the government contracts case, if you look at the A-12 Avenger and the, the McDonnell Douglas and General Dynamics cases. If you read, reading those cases closely, the, the contractors negotiated for months, if not years, on how to maintain the A-12 Avenger. They had control over the circumstances. They were working with the government and they could remedy those circumstances by performing better on those contracts. And they certainly, when the government decides to pull those contracts, they were the contractor and no question was a cause of the reason for the government acting. In this case, there is, there is no basis for, to contend. And it's certainly, you know, it's beyond belief to, to suggest that Globe caused these circumstances or that Globe had control and could go to the TSA and say, well, we don't think this layoff is, is proper at this time or this many people should be laid off at this particular time. And Globe couldn't go to the TSA or Congress and say, well, we think if we just do some things differently here, perhaps at San Jose, Globe can continue on and maintain these particular jobs. The, the, the law asked to look at that particular site at those particular jobs. And, and in fact, when you look at what Senator Metzenbaum said, and you've probably read the, the statements from the senators that were in the briefs, but Senator Metzenbaum, when this was being debated in the late 1980s said, this isn't going to apply when the government comes over and takes over a bank. And, and the Department of Labor distinguished the casino-like cases and the government contracts cases from when the FDIC was taking over a bank. With circumstances of national security and the, the act of Congress in November of 2001 are at least as compelling as the crisis that faced the country in the 1980s. And I think on its face, you would say it's even more compelling that if there is such a hierarchy of national situations, national security and airport security rank at the top of those. So this situation is much more compelling now than what we faced with the banks. And I would ask the court to take another look at the Buck case, which is the leading bank case. And there, what happened was, certainly the FDIC was the defendant, but the employer was, when the layoffs took place, was Boatman's, was the private bank that took over the bridge bank. What happened was the FDIC comes in, picks, takes over two failing banks. They establish a bridge bank, okay, and the FDIC runs the bridge bank. And then they find a suitable buyer for the bridge bank. It's a bank called Boatman's. And, and the case, the court expressly says Boatman's didn't offer employment to a couple hundred employees, which led to it. So while, while we can see that the FDIC was the defendant in that case, it's clear that, that, that the court had before the circumstances in which the private employer Boatman's was not offering employment to these people. All right. So in that, in that case, I would say it's not just about the government. The court was looking at the Warren Act. And the focus wasn't whether Globe was an ongoing entity. The focus was who had control over these circumstances? Who caused this? You have to fulfill the intent of the Warren Act. And the Warren Act was employer ordered shutdowns. And, and that's not what we have in this case at all. Well, I think your opponent maybe looks at it a little differently. In other words, when that morning of the takeover, the Globe employee walks out to the assigned spot to start screening people. And there's a big guy with a TSA badge and a gun saying, you're done. I'm, I'm doing this job now. The question I think they're posing is, was there a chance for Globe to warn the Act to give them a chance to adjust prior to getting thrown off the job by the big guy with a gun? Judge Ware considered that issue at the district court. And Judge Ware concluded that that issue is not relevant because we go back to the first question is whether this is a Warren Act triggering event. And, and he said, regardless of whether Globe, and we, we made this argument, he adopted it, regardless of whether Globe knew in advance, had time to warn within 60 days, 30 days, or whatever may be the case. The fact is that it was the government that was controlling the date, the nature, the timing, the circumstances of the takeover. And that, and when the TSA showed up on that day and said, we're doing this job, that Globe had, had no control in any respect over that decision. And, but the question is, did they know anything that they could have given notice about before that? Well, the allegations in the complaint are that they knew on September 27th, which was four days before the first layoff. So, you know, this is a motion for judgment on the pleadings and that's what's before us. So there are four days notice there that, that they knew about. Now, you know, discovery would, would tell us exactly what the date was and so forth, but that's what we have before us. I would contend that that's not an issue for the court. Even if it had been, even if they'd been able to give 60 days, 90 days, or whatever the case may be, the fact is that the government was controlling all this and that it could change and so forth. And it doesn't take a wild imagination to understand why the government wouldn't tell the contractor. This is national security after all. They don't want to advertise to the world, even private, even private contractors, when this takeover is going to take place, when that transition. Imagine, I guess, I guess what you're saying is it wasn't really a layoff by Globe. It was a situation where the job disappeared due to the conduct of the government. That's correct. The jobs were entirely eliminated by an act of Congress and that the TSA ordered it and while Globe handed the layoff notice to them, Globe was doing an act for the government. It wasn't Globe's decision to lay these people off. It was entirely the government's decision. I think at that, I would submit an argument unless there are other questions. I don't think so. Thank you. Thank you. What's interesting about Mr. McAdams' argument is a lot of it is fact-based. He acknowledges that the relevant issues here are did they have control over the date or the nature or the timing. We alleged facts indicating that, in fact, they did, that the layoffs took place in phases, that the date was something that perhaps they knew about in August, but it changed for different groups of employees. The only issue that differs, that makes this case any different from the Elsinore Shores case or the government contracting cases is this aura of national security coming along with the Patriot Act. But this case isn't about national security. This case is about who had notice and when did they need to provide that notice to the employees. And if you look at the federal regulations, which we attached to our reply brief, and if you look at the Elsinore Shores case, they point out that this isn't the first time somebody's come up and said, we think that there should be an exception to the Warren Act for government-ordered closings. The Department of Justice rejected that exception, and every court that has analyzed it has rejected that exception. They say there's no exception to the Warren Act. We go back to the affirmative defense, do the factual inquiry about foreseeability. Well, sure, because there are different kinds of government-ordered closings. An OSHA or EPA kind of closing is real different from an FDIC type of closing. But — And so the question really is, is this one of the sort where the employer can do anything about it or not? And that is something that needs to be explored on discovery. Well, what in the world could Globe have done about it? Well, that was exactly my point in the hypothetical. If they knew — What could they have done about it? That's the question. They can't have done a thing about it. They may have had or may not have had something to do with a particular date. Which is control over the timing of the layoffs. And if they have that control, why shouldn't the employees get the benefit of the knowledge that comes with that control? I mean, that's the whole problem. I mean, where does the complaint say that? Your Honor, that gets to what I think is the other fundamental problem with this decision. We're at a judgment-on-the-pleading stage. Yes. We asked for leave to amend. This Court has said that leave to amend should always be granted unless the pleading could not possibly be cured by the allegations of other facts. But we're not in a 12 v. 6 situation here. Now we're up at the stage of the judgment on the pleadings. Yes. But it's the same standard. You can't we're at a case pre-discovery, pre-rule 26 disclosures, and we've got we're alleging the facts that we're able to come up with, facts that we could only get through a freedom of information request from the Federal Government about the nature of the contractual termination here. So on a motion to dismiss judgment on the pleading stage, we should be entitled to allege those facts if that's what's necessary to state something under the Warren Act. We believe we've already stated that claim, but certainly we shouldn't be denied that ability at a motion-to-dismiss stage. The and the complaint does allege facts that indicate control. They do allege control over timing, control over the phases of the layoffs, and we believe that we should be entitled to allege those facts if that's what's necessary to state something under the Warren Act. Now, there's another thing that undermined this general premise that seems to be in this Court today, that Globe was completely shut out of this business and had no ability to continue operating there. In fact, Globe employees were operating at that airport two years after these supposed government-ordered closures. So something was going on. There were some negotiations. There was some work between the government and Globe about who was going to be laid off and when they were going to be laid off. I think what it this Court has succinctly summarized the purpose of the Warren Act. It said that the Warren Act is a wage worker's equivalent of business interruption insurance. And here, there's no reason why Globe should be able to deny coverage under that insurance policy. By citing an exclusion that isn't anywhere in the policy. They shouldn't be able to get out of their obligation under the Warren Act by saying, well, this is a government-ordered closure, so we don't have to comply with the Warren Act, when the cases that have analyzed government-ordered closures have said there is no such exception, when the Department of Justice has said there's no such exception. And when defined to judicially create an exception here would put the entire burden of this event on these employees, even if Globe could have given them notice. Thank you. Are you appealing also the denial of the motion to amend? Yes. Yes. We appealed the denial of the motion to amend and the motion to dismiss, our judgment on the pleadings. Okay, counsel. Thank you for your helpful argument. We appreciate it. The matter just argued will be submitted.
judges: Rymer, T.G. Nelson, King